FRANCIS COOK *vs.* JOHN E. GOWAN & another.

A charter party "for a term of months, not less than three months, charterers having the privilege of twelve months; if the vessel should be upon a voyage at expiration of charter party, charter to continue at *pro rata* rates till her arrival and discharge in the United States," and for which the charterer is to pay a certain sum "per calendar month, payable upon return and discharge of each voyage," is a charter for a specified time; and if the vessel is lost on a voyage, freight is due to the time of the loss.

A covenant in a charter party that the vessel "shall be kept tight, stanch, well fitted and tackled" for a voyage, contains no implied warranty of seaworthiness; and if the vessel is made seaworthy as soon as her unseaworthiness is discovered, there is no breach of covenant.

ACTION OF CONTRACT upon a charter party of the barque Franklin, for three months' hire of the vessel from the 1st of November 1854. By the charter party, the vessel was chartered from that date for a "term of months, say not less than' three months, charterers having the privilege of twelve months; if the vessel should be upon a voyage at expiration of charter party, charter to continue at *pro rata* rates till her arrival and discharge in the United States." The owner engaged "that the said vessel in and during the said voyage shall be kept tight, stanch, well fitted and tackled for such voyage or voyages;" and the defendants engaged to pay "for the charter or freight of the said vessel during the voyage aforesaid in manner following, that is to say, four hundred and fifty dollars per calendar month, payable upon return and discharge of each voyage."

At the trial in this court, it appeared that the defendants took possession of the bark upon the 1st of November; that before that day the plaintiff sent word to the defendants that the barque

was ready, and one of them went to see her; and that he made no objection, then or at any time, that she was not ready, or to receiving her.

The defendants introduced evidence that the barque sailed upon the 14th of November 1854 from Portland to Monk's Island in the Gulf of Maracaibo, for guano; that ten days out, during a storm, they discovered that the maintopmast was rotten, and were obliged to bear away to procure a new one to St. Thomas, which they made on the 2d of December; that the vessel was not seaworthy upon the 1st of November; that upon the 9th of December she proceeded from St. Thomas to Monk's Island; that when about half loaded, upon the 1st of January 1855, she parted her stormfasts during a heavy gale, and drifted ashore, and was totally lost; and that if it had not been for the delay at St. Thomas, the vessel would have been fully laden before the storm came on. It appeared that nothing was known of any unseaworthiness at the commencement of the voyage.

The chief justice ruled, " that if the vessel was unseaworthy when she left Portland, and yet, as soon as such unseaworthiness was discovered, the vessel was made seaworthy at St. Thomas, and she thereupon continued her voyage, being seaworthy, such prior unseaworthiness would be no defence to the action; there being no implied warranty of seaworthiness, but a covenant merely that the vessel should be kept seaworthy during the voyage." A verdict was taken for the plaintiff for two months' charter money, and the case reported to the full court for their decision upon this ruling, and also upon the question whether the plaintiff was entitled to receive compensation for hire of vessel for three months or for any time under the charter party.

*C. M. Ellis,* for the defendants.

*C. T. Russell,* for the plaintiff.

BIGELOW, J. This is not a case where the freight money agreed to be paid under the charter party is made dependent on the performance of a stipulated voyage or voyages. The vessel was hired " for a term of months, not less than three

months, charterers having the privilege of twelve months." The freight or charter money was to be paid as follows : " Four hundred and fifty dollars per month, payable upon return and discharge of each voyage." This was clearly a hiring of the vessel for a specific time ; the freight or charter money was fixed or measured by time, and was due and earned at the expiration of each specified interval, irrespective of the performance of any particular voyage. It was only the time of payment that was postponed, for the convenience of the hirer, until the arrival of the vessel in a port of discharge. The contract resembles very closely the charter party which passed under adjudication in *McGilvery* v. *Capen,* 7 Gray, 525 ; and that case is decisive of the liability of the defendant in the present action to pay freight for the two months during which the vessel remained in his custody and employment.

Nor is it any answer to the claim for freight, that the vessel was found to be unseaworthy during her voyage to St. Thomas. There was no warranty by the owners that she was seaworthy at the commencement of the charter party, or that she should continue so during the term. They only agreed that she should be kept tight, stanch and strong; and this covenant was well kept and fully performed, if every defect and want of suitable repair were remedied as soon as by the use of due and reasonable diligence they could be discovered and proper opportunity could be had to repair the vessel and make her seaworthy. The contract of charter party is to have a reasonable construction. The owner of the vessel could not be required to repair defects of which he had no knowledge, and which could not be discovered by the use of usual and ordinary skill and care by himself or his agents. The evidence in this case tends strongly to show that the defect in the masts was latent, and such as escaped the attention, not only of the owners, but of the master of the vessel and others in the employment of the defendant for several weeks after they had entire possession and control of the vessel. Under these circumstances, there was no proof of any breach of covenant on the part of the plaintiff. The vessel having put into port, and been there suitably repaired, as soon

as the defects in her topmasts were discovered, the contract was fully performed by the plaintiff.

It is hardly necessary to add that the defendant can claim no deduction from the freight money by reason of the retardation of the voyage, occasioned by putting into port for the purpose of making repairs on the vessel. Such delay is necessarily incident to the nature of the property which is the subject of the contract, and must be presumed to have been in contemplation of both parties when the charter party was entered into. The charterer takes on himself the risk of such delay as is necessary to enable the owner to perform his contract of keeping the vessel seaworthy during the voyage, and cannot subject the owner to any loss or damage resulting therefrom. *Kimball* v. *Tucker*, 10 Mass. 195.　　　　*Judgment on the verdict for the plaintiff.*